## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

CHARES AARON BROOKS,      :

          Petitioner      :

      v.                   :

CHARLES E. SAMUEL, JR.,      :

          Respondent   :

**CIVIL ACTION NO. 3:16-2386**

**(JUDGE MANNION)**

## <u>MEMORANDUM</u>

Charles Aaron Brooks, an inmate currently confined in the United States Penitentiary, Victorville, California, filed the above captioned petition for writ of habeas corpus, pursuant to 28 U.S.C. §2241. (Doc. 1). Brooks challenges his federal sentence under the Interstate Agreement on Detainers Act (IADA), the sentencing court's modification of his federal sentence and the BOP's subsequent sentence computation, four prison disciplinary actions and numerous vague constitutional claims. For relief, Petitioner seeks "dismissal of indictment #95-cr-564-01; 20-year consecutive sentence in count 7 of judgment and conviction on December 18, 1996 be vacated; disciplinary sanctions be expunged; all disciplinary hearing charges reversed; be entitled to all discovery be disclosed to prisoner that bear exonerating evidence in prisoner favor that were hidden in violation of due process of law." Id. A response (Doc. 16) and traverse (Doc. 18) having been

filed, the petition is ripe for disposition. For the reasons that follow, the Court will deny the petition for writ of habeas corpus.

## I.   **Sentence Computation**

### A.  **Background**

On September 11, 1995, federal officials arrested Brooks after filing a complaint in the United States District Court for the Eastern District of Pennsylvania charging him with bank robbery and possession of a weapon. (Doc. 16-2 at 7-9, Criminal Docket, E.D. Pa. No. 2:95-mj-00894-1). The complaint was dismissed without prejudice on October 5, 1995. Id.

That same day, federal officials indicted Brooks in the United States District Court for the Eastern District of Pennsylvania in Docket No. 2:95-cr-00564-HB-1, charging him with conspiracy to commit bank robbery and armed bank robbery. (Doc. 16-2 at 14-29, Criminal Docket No. 2:95-cr-00564-HB-1).

On February 29, 1996, federal officials filed a superseding indictment charging Brooks with five counts of armed bank robbery and three counts of use of a firearm during a crime of violence. Id. On July 26, 1996, a jury convicted Brooks on all eight charges. Id.

- 2 -

On November 13, 1996, the district court issued a judgment, sentencing Brooks to an 802-month term of imprisonment as follows:

> 5 years on Count(s): 3 to run consecutive to 1, 2, 4, 6, 8
> 20 years on Count(s): 5 to run consecutive to 1, 2, 4, 6, 8
> 20 years on Count(s): 7 to run consecutive to 1, 2, 4, 6, 8
> 60 months on Count(s): 1

(Doc. 16-2 at 31, Judgment).

On December 12, 1996, the United States Attorney's Office made a motion to correct the written judgment to be in compliance with the oral pronouncement, requiring the twenty-year sentence for Count 7 to be consecutive to Count 1. (Doc. 16-2 at 14-29, Criminal Docket No. 2:95-cr-00564-HB-1). By Order dated December 17, 1996, the sentencing court, in accordance with Fed. R. Crim. P. 36, stated the sentence on Count 7 is to run consecutive to the sentences on the remaining counts. (Doc. 16-2 at 40, Order).

The BOP, in accordance with Program Statement 5880.28, Sentence Computation Manual (CCCA of 1984), and 18 U.S.C. §3585(a), calculated Brooks' 802-month sentence as commencing on November 13, 1996 (the date the court-imposed sentence) and applied prior custody credit for the period from September 11, 1995 through November 12, 1996, because he

- 3 -

remained exclusively in federal custody throughout that period which predated his sentence. (Doc. 16-2 at 42-47, Public Information Inmate Data.) Factoring in Petitioner's projected days of good conduct time, he has a projected release date of May 8, 2055. Id.

Petitioner has filed several motions to vacate or set aside, or correct sentence, pursuant to 28 U.S.C. §2255 as well as numerous attempts to pursue a second or successive §2255 motion. (See Doc. 16-2 at 14, Criminal Docket No. 2:95-cr-00564-HB-1).

In the instant petition for writ of habeas corpus, Brooks posits two challenges to his conviction and sentence. First, Petitioner claims that the BOP "failed to disclose to [him] a state of Pennsylvania detainer [was] lodged against [him] on September 12, 1996, nor did state officials and failed to disclose indictment 95-cr-564-01, Judgment and Commitment Order." (Doc. 2 at 1).

Petitioner's second argument is that "while [he] had started serving his sentence at Lompoc Penitentiary, the Federal authorities in the absentia of prisoner without notice to prisoner modifi[ed] imposed sentence after seven days after original sentence was imposed." Id. He further claims that the "Federal authorities did so on December 18, 1996, impose an illegal

- 4 -

sentence", in violation of Petitioner's due process. Id. For relief, Petitioner seeks dismissal of the "entire indictment in 95-cr-564, because a fundamental injustice occurred that violates substantive rights of the prisoner." Id.

## B.    **Discussion**

Federal prisoners seeking post conviction relief from their judgment of conviction or the sentence imposed are generally required to bring their collateral challenges pursuant to 28 U.S.C. §2255. See 28 U.S.C. §2255(e). Section 2255(e) provides that:

> An application for a writ of habeas corpus [pursuant to '2241] in behalf of a prisoner who is authorized to apply for relief by motion pursuant to ['2255], shall not be entertained if it appears that the applicant has failed to apply for relief by motion, to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.

28 U.S.C. §2255(e). To that end, the Court of Appeals for the Third Circuit has observed that "[m]otions pursuant to 28 U.S.C. §2255 are the presumptive means by which federal prisoners can challenge their convictions or sentences that are allegedly in violation of the Constitution." Okereke v. United States, 307 F.3d 117, 120 (3d Cir. 2002) (citing Davis v. United States, 417 U.S. 333, 343 (1974)). Section 2255(e) specifically

- 5 -

prohibits federal courts from entertaining a federal prisoner's collateral challenge by an application for habeas corpus unless the court finds that a Section 2255 motion is inadequate or ineffective. Okereke, 307 F.3d at 120 (citing In re Dorsainvil, 119 F.3d 245, 251 (3d Cir. 1997)). This safety valve language in Section 2255(e) has been strictly construed. See Application of Galante, 437 F.2d 1164, 1165B66 (3d Cir. 1971) (concluding that unfavorable legal standards in circuit where sentencing court was located do not render Section 2255 remedy inadequate or ineffective); Millan-Diaz v. Parker, 444 F.2d 95, 97 (3d Cir. 1971) (concluding that doubts about the administration of a Section 2255 motion in particular do not make the remedy inadequate or ineffective); United States ex rel. Leguillou v. Davis, 212 F.2d 681, 684 (3d Cir. 1954) (holding that even if the sentencing court incorrectly disposes of a proper motion under Section 2255, the appropriate remedy is an appeal of that decision and not a habeas corpus petition).

Importantly, Section 2255 is not inadequate or ineffective merely because the sentencing court has previously denied relief. Dorsainvil, 119 F.3d at 251. Nor do legislative limitations like statutes of limitation or gatekeeping provisions render the Section 2255 remedy inadequate or ineffective so as to authorize pursuit of a habeas petition in this court. See,

e.g., Cradle v. United States, 290 F.3d 536, 539 (3d Cir. 2002); United States v. Brooks, 230 F.3d 643, 647 (3d Cir. 2000); Dorsainvil, 119 F.3d at 251. Rather, only when a prisoner is in the unusual position of having no earlier opportunity to challenge his conviction or "is being detained for conduct that has subsequently been rendered noncriminal by an intervening Supreme Court decision" is Section 2255 "ineffective" for purposes of providing collateral relief. Dorsainvil, 119 F.3d at 251B52.

Brooks cannot demonstrate that a §2255 motion is "inadequate or ineffective" and that resort to §2241 is therefore available simply because he has been denied relief by the sentencing court. See Cradle, 290 F.3d at 539. The remedy afforded under §2241 is not an additional, alternative, or supplemental remedy to that prescribed under §2255 and Brooks fails to demonstrate that he falls within the Dorsainvil exception. If a petitioner improperly challenges a federal conviction or sentence under §2241, as is the case here, the petition must be dismissed for lack of jurisdiction. Application of Galante, 437 F.2d 1164, 1165B66 (3d Cir. 1971).

"The remedy afforded under § 2241 is not an additional, alternative, or supplemental remedy to that prescribed under §2255." Dusenbery v. Oddo, No. 17-2402, 2018 WL 372164, at *4 (M.D. Pa. Jan. 11, 2018). Because

- 7 -

Petitioner has failed to demonstrate that a §2255 motion is inadequate or ineffective to test the legality of his detention, permitting him to proceed under §2241, the Court will dismiss Petitioner's petition for a writ of habeas corpus under 28 U.S.C. §2241, for lack of jurisdiction.

To the extent that Petitioner claims that the BOP failed to credit his federal sentence for time in official detention before the commencement of his sentence, or that he is entitled to serve Count 7 concurrently, the Court finds Petitioner's claims meritless.

The Attorney General is responsible for computing federal sentences for all offenses committed on or after November 1, 1987, see, 18 U.S.C. §3585; United States v. Wilson, 503 U.S. 329 (1992), and has delegated that authority to the Director of the Bureau of Prisons under 28 C.F.R. §0.96 (1992).  See United States v. Brann, 990 F.2d 98, 103-04 (3d Cir. 1993).

Computation of a federal sentence is governed by 18 U.S.C. §3585 and is comprised of a two-step determination: first, the date on which the federal sentence commences and, second, the extent to which credit may be awarded for time spent in custody prior to commencement of the sentence prior custody credit. Section 3585 states, in pertinent part:

- 8 -

(a) Commencement of sentence. A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.

(b) Credit for prior custody. A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences

> (1) as a result of the offense for which the sentence was imposed; or

> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;

that has not been credited against another sentence.

18 U.S.C. §3585.

Furthermore, BOP Program Statement 5880.28, Sentence Computation Manual - CCCA, provides that:

> [t]ime spent in custody under a writ of habeas corpus from non-federal custody will not in and of itself be considered for the purpose of crediting sentence time. The primary reason for 'writ' custody is not the federal charge. The federal court merely 'borrows' the prisoner under the provisions of the writ for secondary custody.

It should also be noted that when a federal sentence is imposed on a defendant in state custody, the federal sentence may commence if the

- 9 -

Attorney General agrees to designate the state facility for service of the federal sentence. Barden v. Keohane, 921 F.2d 476 (3d Cir. 1990); United States v. Pungitore, 910 F.2d 1084, 1118-19 (3d Cir. 1990). However, such a designation is granted only when it is consistent with the intent of the sentencing federal court or with the goals of the criminal justice system. See Bureau of Prisons Program Statement 5160-05, Designation of State Institution for Service of Federal Sentence.

Moreover, federal law provides that, "if a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment," the sentencing judge may certainly order "the terms [to] run concurrently or consecutively." 18 U.S.C. §3584(a). However, unless the court clearly orders them to run concurrently, the default rule is that "[m]ultiple terms of imprisonment imposed at different times run consecutively." Id.

In the instant case, Brooks received credit for the entire period of detention that predates the commencement of his sentence from September 11, 1995, the date of his arrest, through November 12, 1996, the date before his sentencing. (Doc. 16-2 at 42-47, Inmate Data). Thus, his claim that he has not received full credit for his pre-sentence detention is without merit.

- 10 -

## II.   **Disciplinary Proceedings**

### A.  **Factual Background**

### a.  **Incident Report No. 2838138**

On April 22, 2016 at approximately 9:20 a.m., S. Vinton, delivered Incident Report No. 2838138 to Brooks, charging him with use of the mail for an illegal purpose or to commit or further a greatest category prohibited act. (Doc. 16-2 at 118, Incident Report). The incident report reads as follows:

> On April 11, 2016, at 10:30 AM, correspondence originally mailed by inmate Charles Brooks, Reg. No. 49230-066, to the Secretary of State, 1500 11th Street, Sacramento, CA 95814, was returned to USP Canaan for insufficient postage. The correspondence was marked "Legal Mail," but did not qualify as legal/special mail and was treated as general correspondence. A review of the contents of the correspondence revealed inmate Brooks used the mail for an illegal purpose, specifically by completing and mailing Uniform Commercial Code (UCC) Financing Statements to the California Secretary of State in an attempt to file fraudulent and illegal UCC liens against Edmund Ludwig, a Deputy Clerk of Court, and Ronald G. Gardella, a Special Agent in charge for the Office of the Inspector General, based on performance of their official duties. Inmate Brooks completed a UCC Financing Statement Amendment (UCC3) to be filed with the Secretary of State, in which he named Edmund Ludwig, a deputy Clerk of Court, as a debtor and himself as the Secured Party. In the collateral section of the form, inmate Brooks stated he mailed a fraudulent promissory note in the amount of $70,000 to discharge debts associated with his criminal case, which were purportedly owed to the Clerk of Court. Inmate Brooks also completed a UCC Financing Statement (Form UCC-1) to be filed with the Secretary of State and listed Ronal Gardella, a Special Agent In Charge for

the Office of the Inspector General, as a debtor. In the collateral section of the form inmate Brooks state a fraudulent commercial transaction in the amount of $188 million occurred between himself and Agent Gardella. Inmate Brooks is claiming commercial transactions occurred between himself and government officials, and as such, no legitimate contractual transaction/obligation exists to justify the commercial lien against the government officials. The filing or attempted filing of false liens against government officials is a violation of the Court Security Improvement Act of 2007. Inmate Brooks also created 2 fraudulent negotiable instruments (Promissory Notes) in the amounts of $70,000 and unspecified amount of million dollars, and purported the instruments were backed by an account with the U.S. Treasury and associated with his social security number. The U.S. Treasury has determined these types of negotiable instruments to be fraudulent and a violation of federal law.

Id.

On April 24, 2016, Petitioner appeared before the Unit Discipline Committee ("UDC"). (See Doc. 16-2 at 119, Committee Action). During the UDC hearing, Brooks was advised of his rights and provided with an opportunity to have a staff representative and request witnesses. Id. He waived any witnesses but elected to have a staff representative. Id. Although provided with copies of a Notice of Discipline Hearing Before the DHO and Inmate Rights at Discipline Hearing, Petitioner refused to sign either. (Doc. 16-2 at 137, 138). Petitioner "presented a fair but stern attitude during this investigation" and made the following statement:

- 12 -

> I don't understand how they can charge me with fraud if it came back for postage. It is my information and I am not using someone else's. I put my social security number on the back of it. This is because I filed on someone here. Why don't they just transfer me.

(Doc. 16-2 at 119). The UDC noted that the Incident Report had been suspended on April 12, 2016 pending FBI referral. Id. Due to the seriousness of the charges, the UDC referred the charge to the Discipline Hearing Officer ("DHO"). Id.

On May 2, 2016, Brooks appeared for a hearing before DHO, G.A. Zevan. (Doc. 16-2 at 122-128). The DHO confirmed that Petitioner understood his rights. Id. At the onset of the hearing, Petitioner waived staff representation and signed the BP-294 to affirm. Id. He also waived calling any witnesses. Id. Petitioner made the following statement before the DHO:

> I was beaten at this jail.… I filed on the mailroom. This is personal. I got a phone shot. Then I was put in the SHU. I was beaten by Lieut. Bodge in the lieutenant's office. I was told by Lt. Bodge, 'If you file on me, my people will plant this on you." Then, two Associate Wardens threw me against the wall.

Id.

The DHO found Petitioner guilty of Code 196, Criminal Mail Abuse and 204A, Extortion, after reviewing the Incident Report, Investigative Report, envelope with return address of Charles Aaron Brooks, attached

- 13 -

correspondence from secure party Charles Aaron Brooks, photocopy of envelope from U.S. Department of Justice, Officer of the Inspector General, two (2) UCC 3 financing statement amendments to be filed by both Edmund Ludwig and Ronald Gardella. Id. at 124-126. The DHO sanctioned Petitioner on the Code 196 violation with disallowance of forty-one (41) days GCT, 60 days disciplinary segregation and 720 days loss of commissary, MP3, and visitation privileges. Id. at 127. On the Code 204A violation, the DHO sanctioned Petitioner to disallowance of twenty-seven (27) days GCT, 30 days disciplinary segregation and 180 days loss of email and phone privileges and personal property impounded (excluding religious and legal materials) for 180 days. Id.

Brooks was advised of his appeal rights at the conclusion of the hearing. Id. Petitioner received a copy of the DHO report on May 10, 2106. Id. at 128.

### b.  Incident Report No. 2842069

On April 22, 2016 at approximately 8:05 a.m., S. Vinton, delivered Incident Report No. 2842069 to Brooks, charging him with Use of the Telephone for Abuses Other than Illegal Activity, Third Party Calling. (Doc. 16-2 at 140, Incident Report). The incident report reads as follows:

- 14 -

On April 21, 2016, at 6:10 PM, I monitored a complete telephone call placed by Brooks, Charles #490230-066 to telephone number (757) 597-5258 placed on 4/20/16 at 6:40 PM. During this phone call the inmate tells the female caller "hold on someone needs to talk to you." Another inmate picks up the phone and says "hello, I am Charles Brooks, I'm gonna help your sone and he'll help me one day." He continues to say, "I'm 51, and from north philly and have no family." At 2:45 he hands the phone back to the inmate and he continues to talk for the rest of the phone call.

TRUEVIEW records show that inmate ***** has called phone number ***** multiple times during the month April. Inmate Brooks, Charles #49230-066 did place a third party telephone call for inmate *****. A review of surveillance cameras revealed, inmate Brooks, Charles #42930-066 and ***** exited cell 120 and both walked up to telephone station 7203 in C-2 housing unit. Inmate Brooks, Charles #49230-066 places a telephone call to *****. Inmate Brooks, Charles #49230-066 places a phone call and hands the telephone receiver to *****. Collins talks on the phone for approximately a minute and hands the phone back to Brooks, Charles #49230-066. Brooks talks on the phone for a few minutes and hands the telephone back to Collins. Collins continues to talk on the phone for a few minutes, hangs up the telephone and both Collins and Brooks walk back into cell 120. Inmate Brooks, Charles #49230-066 placed a telephone call to telephone number ***** for ***** having knowledge that inmate ***** is circumventing phone monitoring procedures.

Id.

On April 24, 2016, Petitioner appeared before the Unit Discipline Committee ("UDC"). (See Doc. 16-2 at 140, Committee Action). During the UDC hearing, Brooks was advised of his rights and provided with an

- 15 -

opportunity to have a staff representative and request witnesses, both of which he declined. Id. at 143. Although provided with copies of a Notice of Discipline Hearing Before the DHO and Inmate Rights at Discipline Hearing, Petitioner refused to sign either. (Doc. 16-2 at 143, 144). Petitioner "presented a fair attitude during this investigation" and made the following statement, "No Comment." (Doc. 16-2 at 143). Due to the seriousness of the charge, the UDC referred the charge to the Discipline Hearing Officer ("DHO"). Id.

On May 2, 2016, Brooks appeared for a hearing before DHO, G.A. Zevan. (Doc. 16-2 at 146-149). The DHO confirmed that Petitioner understood his rights. Id. At the onset of the hearing, Petitioner waived staff representation and the calling of any witnesses. Id. Petitioner made the following statement before the DHO, "He is assaulting me. Get me otta here." Id.

The DHO found Petitioner guilty of Code 297, Use of Telephone for Abuses Other than Criminal Activity, after reviewing the Incident Report and Investigation, and video surveillance from April 20, 2016 at approximately 6:40 PM of phone station #7203 in C-2 housing unit. Id. at 147-148. The DHO sanctioned Petitioner on the Code 297 violation with disallowance of twenty-

- 16 -

seven (27) days GCT, 180 days loss of email and phone privileges and personal property impounded (excluding religious and legal materials) for 180 days. Id. The DHO noted for the record that:

> BROOKS displayed a contemptuous and argumentative demeanor at the start of the hearing, BROOKS further brandished this tenue with the following: While the disciplinary officer attempted to begin the hearing, inmate BROOKS stated to the disciplinary officer, "He is assaulting me. Get me outta here." At that juncture, the disciplinary officer required SHU staff to escort BROOKS back to his cell. The disciplinary officer regarded these false statements akin to yelling "FIRE" in a crowded movie theater. BROOKS was removed from the hearing at that point to de-escalate and quell the situation. The disciplinary officer regarded those utterings as his statement in this matter, thus ending the hearing.

(Doc. 16-2 at 148).

Brooks was advised of his appeal rights at the conclusion of the hearing. Id. Petitioner received a copy of the DHO report on May 10, 2016. Id. at 128.

### c. Incident Report No. 2846373

On May 3, 2016 at approximately 7:32 p.m., J. Tutino, delivered Incident Report No. 2846373 to Brooks, charging him with Making Sexual Proposal, Giving or Offering an Official Staff Member a Bribe. (Doc. 16-3 at 23, Incident Report). The incident report reads as follows:

- 17 -

> On May 3rd, 2016, at 9:35 AM, while I was conducting medical rounds down in Special Housing Unit on Range B-Lower I was summoned to cell 132, in which housed inmate Brooks #490230-066. Inmate Brooks #490230-066 gave me a note; I asked him if it was a sick call note, he stated that "No, it was a note for me." I started to read the note as I was walking off the range. In the noted Inmate Brooks #490230-066 offered me $2,000 for sex; he wrote that he wanted to give me oral sex and multiple orgasms. He stated that it would be a session of good brutal sex. He stated that "I got a black giant dick with big pockets." And that he wanted my number so he can wire the money. He also stated that "I got to have you." Officer Beck was waiting for me at the gate, and I showed Officer Beck the note as I left the range. Officer Beck stated, "I seen him pass a note of the cell door." Attached is the note.

Id.

On May 8, 2016, Petitioner appeared before the Unit Discipline Committee ("UDC"). (See Doc. 16-3 at 24, Committee Action). During the UDC hearing, Brooks was advised of his rights and provided with an opportunity to have a staff representative and request witnesses, both of which he declined. Id. Although provided with copies of a Notice of Discipline Hearing Before the DHO and Inmate Rights at Discipline Hearing, Petitioner refused to sign either. (Doc. 16-3 at 26, 27). Petitioner "presented a fair attitude towards this matter" and made the following statement, "I did it." (Doc. 16-4 at 24). Due to the seriousness of the charge, the UDC referred the charge to the Discipline Hearing Officer ("DHO"). Id. at 23

On May 16, 2016, a disciplinary hearing was held before DHO, Marc A. Renda. (Doc. 16-3 at 29-32). The DHO noted that Brooks elected not to appear before the DHO, noting "as such, his statement was not obtained." Id. at 29.

The DHO found Petitioner guilty of Code 206, Making Sexual Proposals or Threats, after reviewing the Incident Report and Investigation, the Memorandum dated May 3, 2016 from C. Beck, Senior Officer and one handwritten letter entitled "Between Me and You!," signed by Brooks, Charles #490230-066. Id. at 30. The DHO sanctioned Petitioner on the Code 206 violation with disallowance of twenty-seven (27) days GCT, 120 days disciplinary segregation, five (5) years loss of commissary, TRULINCS, telephone and visiting privileges, three (3) months loss of recreation privileges, and personal property impounded (excluding religious and legal materials) for four (4) months. Id. at 32.

A copy of the DHO report was delivered to Brooks on May 17, 2016. Id.

### d. Incident Report No. 2862837

On June 20, 2016 at approximately 5:16 p.m., B. Bodge, delivered Incident Report No. 2862837 to Brooks, charging him with Assaulting Any

- 19 -

Person. (Doc. 16-3 at 48, Incident Report). The incident report reads as

follows:

> On 17 June 2016, Inmate Brooks, Charles #490230-066 was in
> room #4 of the visiting room. At approximately 1:15 pm he started
> banging on the glass of the visiting room #4. I went over and
> informed Brooks, who is assigned to the Special Housing Unit
> cell 138, that there was another SHU inmate in a non-contact
> visit and we would bring them both back in a half an hour when
> the other inmates visit was complete. Inmate Brooks continued
> to bang on the glass claiming he was being punished. I again
> explained the situation to him. At approximately 1:35 pm Inmate
> Brooks stood on the stool in non-contact visiting room #4 and
> began to kick the glass divider. At that point I went to the door
> and ordered Inmate Brooks to submit to the application of hand
> restraints. He refused several times before finally submitting to
> the application of hand restraints. When I opened the door
> Inmate Brooks was attempting to turn in an aggressive manner
> and threw his head back attempting to strike me. I then placed
> Inmate Brooks on the ground using the minimum amount of force
> necessary to gain control of the situation. Inmate Brooks was
> then escorted back to the Special Housing Unit.

Id.

On June 21, 2016, Petitioner appeared before the Unit Discipline

Committee ("UDC"). (See Doc. 16-3 at 49, Committee Action). The UDC

noted that the incident report was delayed in processing due to FBI referral.

Id. During the UDC hearing, Brooks was advised of his rights and provided

with an opportunity to have a staff representative and request witnesses,

both of which he declined. Id. Although provided with copies of a Notice of

- 20 -

Discipline Hearing Before the DHO and Inmate Rights at Discipline Hearing,

Petitioner refused to sign either. (Doc. 16-3 at 50, 51). Petitioner "displayed

a poor attitude during this investigation" and made the following statement,

"No Comment." (Doc. 16-3 at 49). Due to the seriousness of the incident, the

UDC referred the charge to the Discipline Hearing Officer ("DHO"). Id. at 48

On June 23, 2016, Brooks appeared for a hearing before DHO, Marc

A. Renda. (Doc. 16-3 at 55-59). The DHO confirmed that Petitioner

understood his rights. Id. At the onset of the hearing, Petitioner waived staff

representation and the calling of any witnesses. Id. Brooks elected to make

the following statement:

> I'm a litigator. I wrote Ms. Bodge up and this guy in 2014. It
> happened in the lieutenant's office. I fell. I needed a knee
> replacement. I wrote to internal affairs. I said I don't want no PVS
> visits. Hamilton said you filed on us before. I started doing sit-ups
> in there. I never kicked the glass. I submitted to hand restraints.
> They ran inside the thing and beat me.

(Doc. 16-3 at 55).

The DHO found Petitioner guilty of Code 224A, Assaulting Any Person-

Attempted, after reviewing the Incident Report and Investigation, June 17,

2016 Memoranda from six Officers, a June 17, 2016 Bureau of Prisons

Health Services Clinical Encounter and six (6) photographs depicting

- 21 -

Brooks, Charles #490230-066. Id. at 56. The DHO sanctioned Petitioner on the Code 224A violation with disallowance of twenty-seven (27) days GCT, 60 days disciplinary segregation, eighteen (18) months loss of commissary, TRULINCS, telephone and visiting privileges, personal property impounded (excluding religious and legal materials) for two (2) months and a $100.00 monetary fine. Id. at 58.

Brooks was advised of his appeal rights at the conclusion of the hearing. Id. Petitioner received a copy of the DHO report on June 24, 2016. Id.

## B. Discussion

Liberty interests protected by the Fifth Amendment may arise either from the Due Process Clause itself or from statutory law. Torres v. Fauver, 292 F.3d 141 (3d Cir. 2002). It is well-settled that "prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Nevertheless, the Supreme Court found that there can be a liberty interest at stake in disciplinary proceedings in which an inmate loses good conduct time. Id. Since Petitioner's sanctions

- 22 -

did include the loss of good conduct time, Petitioner has identified a liberty interest in this matter.

In Wolff, the Supreme Court set forth the following minimum procedural due process rights to be afforded to a prisoner accused of misconduct in prison which may result in the loss of good time credit: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the disciplinary charges; (3) an opportunity to call witnesses and present documentary evidence in his defense when it is consistent with institutional safety and correctional goals; (4) assistance from an inmate representative if the charged inmate is illiterate or complex issues are involved; and (5) a written decision by the fact finder of the evidence relied upon and the rationale behind the disciplinary action. Wolff, 418 U.S. at 563-67.

The Bureau of Prisons has enacted specific procedures for disciplinary proceedings. 28 C.F.R. §541.1, *et seq*. Under these procedures, a staff member charges a prisoner with committing a prohibited act by issuing an incident report. 28 C.F.R. §541.5(a). The incident report ordinarily must be issued within 24 hours of the time the staff member became aware of the

prisoner's involvement in the incident. Id. The incident is then investigated. Id. at §541.5(b).

After the incident is investigated, the UDC reviews the incident report and takes one of the following actions: 1) finds that the prisoner committed the prohibited act charged and/or a similar prohibited act as reflected in the incident report; 2) finds that the prisoner did not commit the prohibited act charged; or 3) refers the incident report to the DHO for further review. Id. at §541.7(a). Prohibited acts are separated into four categories based on severity: Greatest, High, Moderate, and Low. Id. at §541.3(a). If a prisoner is charged with a prohibited act in the Greatest or High category, the UDC automatically refers the incident report to the DHO for further review. Id. at §541.7(a)(4).

Under the regulations, when an incident report is referred to the DHO, a disciplinary hearing is conducted in accordance with the procedures set forth at 28 C.F.R. §541.8. The prisoner is entitled to notice of the charges at least 24 hours before the hearing. Id. at §541.8(c). The prisoner is entitled to appear at the hearing and is entitled to staff representation at the hearing. Id. at §541.8(d) & (e). The prisoner is entitled to make a statement and to present documentary evidence. Id. at §541.8(f). A prisoner may request to

- 24 -

have witnesses appear at the hearing on his behalf, but the DHO may refuse to call requested witnesses if they are not reasonably available, if their presence would jeopardize institutional security, or if they would present repetitive evidence. Id. The DHO considers all evidence presented at the hearing. Id. The decision of the DHO must be based on at least some facts and, if there is conflicting evidence, the decision must be based on the greater weight of the evidence. Id. Following the hearing, the DHO must provide a written report documenting that the prisoner was advised of his rights. Id. at §541.8(h). The report must document the evidence relied upon by the DHO, the findings of the DHO, the sanctions imposed by the DHO, and the reasons of the DHO for imposing those sanctions. Id.

In the instant case it is clear from the record that Brooks was afforded all of the required procedural rights set forth in Wolff. He received written notice of the disciplinary charges at least twenty-four hours prior to all four hearings[1]; he appeared at the hearings and made statements either refuting

---

[1] To the extent that Petitioner attempts to argue a delay in delivery of Incident Reports 2838138 and 2862837, the record these incident reports were suspended pending referral to the FBI for possible prosecution. However, they were delivered to Petitioner well within twenty-four hours prior to the DHO hearing.

or admitting to the charges; he was given the right to a staff representative, an opportunity to present witnesses and provide documentary evidence (though he chose not to do so); and he was given written statements explaining the DHO's decision in all four hearings. See Wolff, 418 U.S. at 564–66.

To the extent that Brooks argues that the DHO "brutally beat him" during the disciplinary hearings for Incident Reports 2838138 and 2842069" and should be expunged because the hearings "were not completed", (Doc. 2 at 4), the record before this Court renders Petitioner's arguments spurious. The record reveals that the hearing for Incident Report 2838138 was conducted to completion, with full participation by Brooks at the hearing. (See Doc. 16-2 at 122-128). As to the hearing for Incident Report 2842069, the record reveals that the hearing was conducted to completion, however, without Brooks being present, as he became disruptive, posing a threat to institutional security, and was removed from the deliberative process of the DHO hearing as a security threat. (See Doc. 16-2 at 148). An act on the part of the DHO that is completely consistent with BOP policy. (See Doc. 16-3 at 114, 28 C.F.R. §541.8, DHO Hearing at (d)(3)(e)(2)).

Petitioner's remaining claims challenge the sufficiency of the evidence used to support the DHO's decisions. (Doc. 2 at 8-17). The Supreme Court has held that the standard of review with regard to the sufficiency of the evidence is whether there is "any evidence in the record that could support the conclusion reached by the disciplinary board." Superintendent v. Hill, 472 U.S. 445-46 (1985); see also Griffin v. Spratt, 969 F.2d 16, 19 (3d Cir. 1992). If there is "some evidence" to support the decision of the hearing examiner, the court must reject any evidentiary challenges by the plaintiff. Hill, 472 U.S. at 457. In Hill, the Supreme Court described the "some evidence" standard as follows:

> Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

472 U.S. at 455-56.

Petitioner seeks expungement of all four incident reports, claiming they were all fabricated by the reporting staff members as part of a conspiracy to retaliate against him and subject him to harsher conditions of confinement, and that the DHO "hid evidence" of the reporting officers' conduct and

- 27 -

improperly relied upon evidence submitted by BOP staff members. (Doc. 2 at 3-14).

### a.  Incident Report No. 2838138

Brooks denies attempting to send unlawful UCC documents to the California Secretary of State in an attempt to secure a fraudulent lien against Judge Ludwig and an OIG officer, claiming he had no access to the writing materials he needed to prepare those documents. (Doc. 2 at 3-6). He also claims the incident report is baseless because no judgment or lien was ever entered against the intended individuals. Id. at 5. He alleges that a staff member intentionally manipulated the evidence on the envelope to file a false incident report against him and the DHO concealed her "hate crimes" against him. Id. Finally, he claims that mailroom staff violated BOP policy by opening and inspecting his legal mail and that since there were no actual liens or promissory notes contained within the envelope, the charges against him are improper. Id. at 7. The Court finds Brooks' claims completely unsupported by the record.

The record reveals the DHO based his decision on the written account of the reporting officer, a prison investigative report concerning the documents contained in the envelope, as well as copies of the documents

- 28 -

and envelopes themselves. (Doc. 16-2 at 124). He noted Brooks' denial of the charge and his statements during the hearing did not exculpate him and that the UCC documents in the envelope contained Brooks' signature, thus amplifying his guilt. Id. at 125-136. While Brooks denied the charge during the hearing, it appears he now seeks to amplify his opposition to the incident report in the instant petition. However, based on the information before him at the hearing, the DHO determined that the greater weight of the evidence supported the conclusion that Brooks committed the prohibited acts. Id. As such, the DHO's decision clearly meets the due process requirement of being supported by "some evidence in the record" under Hill. See Sinde v. Gerlinski, 252 F.Supp.2d 144, 150 (M.D. Pa. 2003) ("If there is 'some evidence' to support the decision of the hearing examiner, the court must reject any evidentiary challenges by the plaintiff") (quoting Hill, 472 U.S. at 457).

**b. Incident Report No. 2842069**

Brooks does not challenge the underlying evidence supporting this incident report, but argues that instead of a 297 violation, the DHO "should have properly charged [him] with a code 397 where the telephone call were

clearly not for illegal activity, so the prisoner should not be charge for a illegal activity or criminal activity code 297 is inappropriate." (Doc. 2 at 6).

Federal regulations define a Code 297 offense as, "Use of the phone for abuses other than illegal activity which circumvent the ability of staff to monitor frequency of telephone use, content of the call, or the number called; or to commit or further a High category prohibited act." 28 C.F.R. §541.3, Table I, Prohibited Acts and Available Sanctions. Code 397 offenses are distinguishable from Code 297 offenses are appropriate if the inmate does not interfere with the BOP's monitoring activities. Id. The DHO determined, "inmates are not to use the TRUFONE account of another inmate under any circumstances as this meets the criteria for circumvention of phone monitoring procedures." (Doc. 16-2 at 148). As such, Plaintiff's actions fit the Code 297 offense.

### c. Incident Report No. 2846373

Brooks claims the reporting medical staff member fabricated the incident report because he filed grievances against medical staff members, specifically, Ms. Szymanski, for denial of medical care. (Doc. 2 at 8.) He claims a correctional officer on his unit handed her a note and told her to fabricate an incident report for passing the sexual note to her. (Id.) Brooks

- 30 -

notes that "the letter of a sexual proposal did not bear Ms. Szymanski's name nor a date on this sexual proposal threat or note." Id. Finally, he claims he could not have written the note because he had no access to writing materials. Id. Since Brooks elected not to attend the hearing for Incident Report 2846373, he did not avail himself of the opportunity to defend himself against the charge. (See Doc. 16-3 at 29-32). Regardless, the Court finds the DHO's decision is adequately supported by the written account by the reporting officer and by the photocopy of the note and the content therein. Id.

### d. Incident Report No. 2862837

Brooks claims that before the issuance of Incident Report No. 2862837, the reporting officer threatened to force him to perform oral sex on himself and four other officers, in an attempt to force him to withdraw grievances against him. (Doc. 2 at 9.) He also claims another officer threatened to kill him in the visiting room and that on the date of the incident, the officers charged into the room and brutally beat him for snitching on staff. Id. During the DHO hearing, Brooks denied kicking the glass, stating he was only doing sit-ups in the visiting room. (Doc. 16-3 at 55). He claims he did not refuse to submit to hand restraints as stated in the incident report, and instead, the

- 31 -

officers "ran inside the thing and beat me." Id. In considering Plaintiff's

argument, the DHO found that:

> BROOKS disputes attempting to strike the reporting staff
> member with his head. In this the DHO will afford greater weight
> to the reporting staff member, whose description of the incident
> is also corroborated by the aforementioned staff witness, as they
> derive no known benefit by providing false information and have
> a legal obligation to present accurate and factual information.
> BROOKS also alleged he "wrote up" the reporting staff member
> in 2014 and "they beat him". While this is a naked assertion void
> of any factual enhancement, nor was a scintilla of evidence
> provided to substantiate such an allegation, this is not a matter
> for consideration by the hearing officer. There are other avenues
> available to report such allegations. At threshold is the issue
> whether BROOKS turned in an aggressive manner and threw his
> head in an attempt to strike the reporting staff member.

(Doc. 16-3 at 58). Thus, the DHO considered all evidence and drew the

conclusion, based on the greater weight of the evidence, the prohibited act

of Assaulting any Person-Attempted (Code 224A) was committed. Id.

Accordingly, the Court finds the that all four detailed DHO reports

adequately describe the basis for the DHO's decision and demonstrate the

evidence relied upon by the DHO in each instance exceeds the "some

evidence" standard stated in Hill. See Sinde v. Gerlinski, 252 F.Supp.2d 144,

150 (M.D. Pa. 2003) ("If there is 'some evidence' to support the decision of

the hearing examiner, the court must reject any evidentiary challenges by the plaintiff") (quoting Hill, 472 U.S. at 457).

Finally, Petitioner's retaliation claims, verbal harassment claims, access to court claims and Eighth Amendment excessive force and medical deliberate claims, scattered throughout his petition are challenges to Petitioner's conditions of confinement and are not properly raised in a §2241 challenge to the fact or duration of confinement. See Leamer v. Fauver, 288 F.3d 532, 542 (3d Cir. 2002).

The Court further finds that all sanctions imposed by the DHO were within the limits of 28 C.F.R. §541.3. Petitioner was found guilty of 100 and 200 severity level prohibited acts. Pursuant to 28 C.F.R. §541.3, the following are the sanctions available for 100-level offenses:

A. Recommend parole date rescission or retardation.
B. Forfeit and/or withhold earned statutory good time or non-vested good conduct time (up to 100%) and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended).
B.1. Disallow ordinarily between 50% and 75% (27-41 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended).
C. Disciplinary segregation (up to 12 months)
D. Make monetary restitution.
E. Monetary fine.

- 33 -

F. Loss of privileges (e.g. visiting, telephone, commissary, movies, recreation).

G. Change housing (quarters).

H. Remove from program and/or group activity.

I. Loss of job.

J. Impound inmate's personal property.

K. Confiscate contraband.

L. Restrict to quarters.

M. Extra duty.

The following are the sanctions available for 200-level prohibited acts:

A. Recommend parole date rescission or retardation.

B. Forfeit and/or withhold earned statutory good time or non-vested good conduct time up to 50%, or up to 60 days, whichever is less, and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended).

B.1. Disallow ordinarily between 25% and 50% (14-27 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended).

C. Disciplinary segregation (up to 6 months)

D. Make monetary restitution.

E. Monetary fine.

F. Loss of privileges (e.g. visiting, telephone, commissary, movies, recreation).

G. Change housing (quarters).

H. Remove from program and/or group activity.

I. Loss of job.

J. Impound inmate's personal property.

K. Confiscate contraband.

L. Restrict to quarters.

M. Extra duty.

Thus, the sanctions imposed by the DHO in the present case were consistent with the severity level of the prohibited act and within the maximum available to the DHO.

Further, "[t]he Eighth Amendment is violated only when a punishment is grossly disproportionate to the severity of the offense." Levi v. Holt, 192 F. App'x 158, 162 (3d Cir. 2006) (citing Rummel v. Estelle, 445 U.S. 263, 271-74 (1980)). Therefore, only sanctions that "impose [ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," may be deemed excessive. Moles v. Holt, 221 F. App'x 92, 95 (3d Cir. 2007) (citing Sandin v. Conner, 515 U.S. 472, 484 (1995)). The penalties imposed here, loss of good conduct time, disciplinary segregation, and loss of privileges, do not work an "atypical and significant hardship" on Brooks and do not serve to extend his confinement beyond the expected parameters of his sentence. Sandin, 515 U.S. at 484-85. Consequently, he is not entitled to relief.

- 35 -

## III. Conclusion

For the reasons stated above, the petition for a writ of habeas corpus will be **DENIED**. A separate Order will be issued.


*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**


**DATED:**     **November 15, 2021**
16-2386-02

- 36 -